GARA W. BROWN, Appellant, v. GEORGE EARL HERMANCE, Appellee.

No. 46050.

DECEMBER 15, 1942.

OPINION ON REHEARING JUNE 15, 1943.

C. H. Van Law, of Marshalltown, for appellant.

Boardman & Cartwright, of Marshalltown, for appellee.

OLIVER, J.— ▉ A rehearing having been granted and the appeal resubmitted, the former opinion, reported in 6 N. W. 2d 867, is withdrawn and the following is substituted therefor:

The real estate involved is two city lots, in Marshalltown, Iowa, upon which are a six-room house, a barn, and a chicken house. Appellant's mother obtained the property from her father in 1894, and since then has lived there almost continuously. In 1940 she was a widow, aged sixty-nine years, and occupied the premises with appellant, who had lived there most of his life and who was then the head of this family of two. Since 1924, appellant, as a veteran of the first World War, had been allowed a soldier's exemption from taxes upon the property. For a few years of this period he held an unrecorded deed to it from his mother.

August 13, 1938, the mother deeded the property to Buchwald Lumber Company in satisfaction of a $500 balance on a mortgage to said company. A written agreement and lease were made, which recited she was given the option to repurchase the property at that price, subject to certain taxes, for two years from August 13, 1938, and in the meantime, for part of said period she was required to make certain payments of rent. Thereafter, A. H. E. Matthews acquired the assets of said lumber company.

Prior to the expiration of said two-year period, appellant and his mother attempted to negotiate a loan from various parties to redeem said property. The total amount necessary therefor appears to have been about $600. Those efforts were unsuccessful, and after August 13, 1940, Mr. Matthews demanded $750 for the property.

Among others contacted by the Browns before August 13, 1940, was appellee, Hermance, a physician and surgeon of Marshalltown. He was a friend of and the family doctor for appellant and his mother. After appellee had at various times declined to consider the matter, he was finally prevailed upon to do so about August 25, 1940, and the next day secured the deed to the property from Matthews for a consideration of $750.

Appellant and appellee agree they had some understanding that appellant might redeem or recover the property from

appellee upon payment to appellee of his portion ($700) of the $750 purchase price. While there is some factual disagreement, the case turns largely upon the legal effect of the words and acts of the parties. The deed from Matthews to appellee was in ordinary form and made no reference to any agreement between appellee and appellant. Nor was there anything in writing to evidence said agreement. Appellee contends that, under a proper interpretation of the spoken words and other manifestations of intention forming the agreement, appellant had only an option to purchase the property. Appellant asserts the transaction was in legal effect a loan to enable appellant to recover the property and that appellee took title as security therefor.

Appellee testified that prior to August 13, 1940, appellant told him appellant and his mother were losing their home and asked appellee to take up the Matthews option; that after August 13th, appellant begged appellee to take up the option; that appellant said he had raised $50; and that appellee said, "All right," he would look at the property.

"And I went down and looked at the property and before I got out of the house his mother had her arms around me and cried and I got soft hearted and told them, All right, they could have it."

Appellee took the $50 from appellant and gave appellant a check for $750, made to Matthews. Appellant took the $750 check to Matthews. On the following day, August 26th, Matthews delivered the deed to appellee. According to appellee, appellee agreed to take up the Matthews option and to give appellant until January 1, 1941, to take up the new option.

At this point it may be observed that there was no Matthews option then in existence for appellee to take up. The legal effect, prior to August 26, 1940, of the contract held by Matthews is immaterial, because the parties all treated it as an option which had expired August 13th, and the transaction of August 26th, with Matthews, was a purchase for $750. This was a substantial increase over the option figure.

Appellant testified he was asking appellee to loan him the money; that when appellee came to the house and examined it he said "he would help us"; that appellee at no time said

anything to indicate the transaction was not a loan; that appellee did not tell him in what form appellee wanted the transaction carried through; that he left to appellee what appellee wanted as security for the $700; that appellee loaned him the money with the property as security; that after securing the deed appellee told him appellee would like to have the money repaid him about January 1, 1941, and appellant said he would try to do so.

The property was worth considerably more than $700. A witness for appellee fixed its value at "$800, cash, quick sale, immediately." Appellee placed the value at $950. Appellant and two real-estate men testified respectively to values of $1,200, $1,150, and $1,500. There was evidence that the value has since increased.

Some circumstances tending to indicate that the transaction was a loan are the following: In 1941, appellee paid the 1940 taxes and took advantage of the war veterans' tax exemption granted appellant, or appellant's mother, as owner of the property; appellee in testifying once referred to the transaction as a loan on the property; appellee testified he told the Browns "they could have it" (the money).

On January 1, 1941, appellant failed to pay appellee the $700 furnished by appellee. Appellee granted him several extensions. In the meantime, since August 26, 1940, appellant had been paying appellee $8 per month, which was called rent upon receipts given appellant by appellee. About June 11, 1941, appellee gave the Browns written notice to vacate the property. This suit followed. Appellant moved for new trial on the ground of newly discovered evidence. In the hearing thereon appellant produced a letter, admitted to have been written to appellant by appellee, May 3, 1941, as follows:

"Dear Gara:

I am interested in knowing if you have a plan to take care of the loan on your house this spring. Let me hear from you, for I would like to place the house for sale the 1st of June if you do not have anything definite in mind."

Our conclusion makes unnecessary the consideration of this letter and the error assigned to the order overruling the

motion for new trial. It may be noted, however, that appellee apparently had the idea that one who holds legal title to real estate as security for a loan may, upon default of the borrower, snuff out his rights immediately by notifying the borrower that the contract is terminated. That is not the law. Nor will the view of either or both parties be controlling on that point. If the deed was intended as security, the settled policy of the law accords appellant the right to redeem. Guttenfelder v. Iebsen, 230 Iowa 1080, 1086, 300 N. W. 299, 303.

It is well established that where one party purchases real estate, and borrows all or a portion of the purchase price from another party, the vendee may have the title pass direct from the vendor by warranty deed to said third party, and may establish by parol that the same is, in fact, a mortgage, and held by the said third party solely as security for the purchase price so advanced for the vendee. Osborne v. Osborne, 196 Iowa 871, 195 N. W. 586; Jones v. Gillett, 142 Iowa 506, 118 N. W. 314, 121 N. W. 5.

The rule in such cases is, in order that the deed be held a mortgage, the evidence must be clear, satisfactory, and convincing. McKenney & Seabury v. Nelson, 220 Iowa 504, 262 N. W. 101.

In the case at bar both parties agree that the legal title to the property was to be conveyed to appellant by appellee upon payment of the $700. In the language of Trucks v. Lindsey, 18 Iowa 504, 505:

"We are relieved of some doubts which might otherwise be involved in the case, by the fact that neither party contends that the deed itself embraces the entire contract of the parties."

The only real issue is whether appellant had a mere option to purchase the property from appellee or whether appellee took title as security for a loan for part of the purchase price.

Each case of this character must be determined by a consideration of its own peculiar circumstances, looking behind the form and at the true nature of the transaction and the intention of the parties. However, it is the rule that where an absolute deed is accompanied by a contract to reconvey on

specified conditions, and, under the evidence, a doubt exists as to whether the conveyance was intended to be absolute or as security for a debt, the contract will be construed to be a mortgage rather than a privilege to repurchase or a conditional sale. Hughes and Dial v. Sheaff, 19 Iowa 335, 342; McRobert v. Bridget, 168 Iowa 28, 149 N. W. 906; Trucks v. Lindsey, supra; Fort v. Colby, 165 Iowa 95, 144 N. W. 393.

The rule is thus stated in Hinman v. Sage, 208 Iowa 982, 984, 221 N. W. 472, 473:

"If all of the prerequisites are shown, and, under the evidence, a doubt exists as to whether the conveyance was intended to be absolute or as security for a debt, the instrument will be construed as a mortgage."

Appellee points out that monthly payments of $8 by appellant were referred to as rent. Although this is a circumstance to be considered, it does not necessarily disprove appellant's equitable ownership. Jones v. Gillett, supra, 142 Iowa 506, 512, 118 N. W. 314, 316, 121 N. W. 5, and citations.

That appellant paid part of the purchase price of said property is a fact entitled to much weight. In the absence of proof to the contrary it would not appear logical that one who had done this should be held to have only an option to purchase the property from the party to whom it was conveyed.

Upon the whole record, considered under the foregoing rules, we conclude the deed to the property was taken by appellee as security and is in effect a mortgage. The decree is reversed and the cause remanded to the district court for such further proceedings as may be proper under this decision.—Reversed and remanded.

GARFIELD, C. J., and MULRONEY, SMITH, WENNERSTRUM, MANTZ, and BLISS, JJ., concur.